Appellate, Cross Appellate, by Michael Fleming Mr. Fleming, good morning. Thank you, your honors. May it please the court, counsel. This is a marital dissolution case, obviously, and the chief issue that we've raised before the court is a dispute over about $397,000 of funds that were accumulated during the marriage and initially at least deposited into an account in the husband's name alone and then eventually, as things were breaking down, transferred out of that account into a joint account with his father. However, most of it later transferred into an account in his father's name alone. Some of it, about $50,000, I think, was just withdrawn in cash during, primarily after the divorce proceedings had started and was unexplained at trial. And frankly, I think the whole problem here lies in the court's eyes that the court did not believe that, did not see how the parties could have accumulated that much money during the course of, essentially, when the proceedings started, the money started being transferred, a five-year marriage, at that point there was about $300,000 in the account, and despite the fact that the record... In what account? In the husband's savings account. That came into that account during the course of the marriage? Right. And it was not inherited? There's no evidence of inheritance. The husband claimed that some of the initial deposits were from his father. He claimed that. Does it matter? The judge seemed kind of disappointed. Well, I think if it's proven, yes, but we start with the principle in 503 and the interpreting case law that assets that are accumulated during the marriage are presumed to be marital property, and then that the burden of proof is on the party claiming otherwise to show by clear and convincing evidence that it's non-marital, that it falls into a gift or inheritance or was owned before the marriage itself, and quite frankly, I think it's clear from Judge Reisinger's rulings in the written order and the written post-trial order that he placed the burden instead on my client, on the wife, to prove that it was marital property. And again, I think he did this because he somehow didn't see that they could have accumulated this much money. The facts clearly show from the bank statements admitted that during the last year of the marriage, the parties together, they were regularly saving, banking Mr. Dillon's entire Caterpillar paycheck of roughly $4,000 net a month. Actually it's about just a little over that on average. Before that, so far as the bank records go back, they were regularly saving at least $2,000 or $3,000 or sometimes a little more per month. They lived an extremely frugal life. In fact, my opponent referred to it as austere during the course of the proceedings when the court so found. They didn't go out at all. They didn't buy anything to speak of. They were extremely thrifty in what they did buy for groceries and things like that. Very simple meals. Didn't go out to eat. They didn't do anything. They had eight or nine-year-old cars that got excellent gas mileage and they didn't drive them to speak of, other than they lived, each of them lived, their apartment was within several miles of their respective workplaces and they drove to and from work every day and that was about it. Occasional trips to New York, Chicago to see relatives or Cleveland and that was about it. You know, in this case, the trial judge specifically said the husband wasn't credible, is that right? That the first sentence in his opinion is the husband has no credibility. And the only evidence with regard to, it really wasn't the husband's position that it was a gift. It was the husband's position that it was the father's money that was a matter of convenience. I think that's what he said, although I think there was actually, if you look through the transcript at length, there are some contradictions in his position from time to time, but he certainly... That's what he put forward. Yeah, he certainly indicated that. And the problem is, the Didier case that we've cited says that generally the testimony alone of the party claiming non-marital property as to why it's non-marital is not normally sufficient to meet the clear convincing evidence standard that there needs to be documentation. The only documentation of any kind, and I said so in the brief, I think it's apparent from the record, we literally tried for years to get documentation from the husband through And the only documentation that ever showed up was something that we somewhat accidentally subpoenaed ourselves. The $10,000 tax and the tax return you're talking about? Well, no, no, no. There was $80,000, $82,000 in two transactions that for about 24 hours was sitting in an account jointly held by Mr. Dillon and his father. It came in, the next day it went out, and basically at that same time, that amount showed up in the account he had just opened in his own name at National City Bank up in Michigan. That's the only tie to the father, and there's no... Just because it's in that account jointly owned by Mr. Dillon and his father for 24 hours, that doesn't prove that it's the father's money. We do know, again, that as thrifty as they were, I think I estimated conservatively that they would have easily saved $70,000 to $80,000, if not more, during the first three years of the marriage in the Detroit area. We don't have evidence as to that money. There was also, and this just came up at trial, we've not seen this in discovery, although I didn't object to it, but there was some documentation brought at trial which indicated that Mr. Dillon himself had about $60,000 in an account in his name as of the date of the marriage back in 2002. We have no idea where that money went. Again, that's clearly non-marital. It's possible that that money ended up in this account. We don't know, because he certainly hasn't claimed that, and again, there's simply no tracing, there's no documentation as to the original source of the $82,000, the $48,500 that was also deposited in this account when it was created three years into the marriage, which was shown for basically a day to be in a joint account owned by Mr. Dillon and his sister, who's a dentist out in New York, which he also said was money from his father. Then another $53,000 that showed up a month or two later, there's absolutely no documentation on whatsoever other than the fact of the deposit in the account, and again, his testimony that it was money from his father. You know, problematical in this case is, under your theory, if the evidence was insufficient, against the manifest way of the evidence, and the judge did not find the husband to be credible, and it's only his testimony that talks about these joint funds, and of course, two of the accounts are jointly held with the father and then the sister, right? Yeah, one account. Of course, they're not parties to any of this, but also there was an attempt to get a continuance for the father's testimony, and that, because he hurt his back or something, and that was denied. And I think if I remember correctly, there was something said about, well, he can testify. Of course, that's before final findings that somebody's not credible and stuff like that. So there was an attempt by the husband to also put on the father, which was denied in the case, as far as proofs. What import is that, then, for this case? I don't think that has any import at all, Your Honor. First of all, it's not a ruling that's been challenged in any way on appeal. Secondly, once again, we gave this gentleman four years of opportunity to provide documentation, which is what the case law seems to prefer, to trace where these funds came from. And we had absolutely nothing except for, in the case of the two accounts, the money that came in and went out in a day's time and found its way to, so I don't know what else. I'm asking that question because, hypothetically, let's say this was against the manifest way of the evidence. Well, they made an attempt to have this other person, who the claim is that this money or most of it was from this guy, and yet that was denied by the trial court. I would also suggest that absent some sort of an offer of proof at that time, for the record's sake, so that this court could see what that testimony or evidence might have consisted of, then there was no effort to suggest that there was any documentary evidence that the father would be testifying to, nothing provided in discovery, which clearly it would have had to have been. In fact, I think if the father had attempted to identify any documents that might show this money, I think they would have been properly excluded as not having been provided in discovery. Because we clearly had asked for any documentation that would deal with these accounts and the source of the funds. So I just don't think that's an issue at all. The father's testimony wouldn't be necessary to introduce bank records to show where the money came from, or the transfers, or these cash deposits, it appears? It appears so, Your Honor. And does father live in close proximity to his son, such that he could hand him money? He does not. I think according, and there is his testimony in the record, the husband's testimony in the record, as to the father's whereabouts. I believe he lived primarily in California and some in New York. He also spent a fair amount of time in India. So did the cash deposits correlate with, did the husband testify there were visits with his father, or exchanges of money during these visits? I don't believe there was any testimony to that effect, no. So we sort of have the evidence, and what we really have is the trial court applied the wrong burden of proof. Can this court right the wrong and apply a correct burden of proof? Oh, absolutely. Based on the facts that we have? Absolutely. Or must we remand for the trial court to do that? Well, no, I think there is some question. I think this court can certainly determine that the court clearly applied the wrong burden of proof, placed the burden on the wife, and that the evidence, if the burden is correctly placed, based on the evidence submitted, that burden was nowhere near met. And this court can determine that the funds in the account were marital property as a result. I think the one thing that this court could decide, but doesn't have to decide at this point, is how those funds are allocated. We've suggested in our brief that the dissipation of these funds primarily by giving them to the father should result in essentially a 50-50 split of those proceeds, because that's pretty clearly what the court did with the rest of the assets that I identified. It would be a fairly common thing to do in a marriage of seven years duration like this. But I think this court could say, look, we're going to rule that based on the burden of proof that was not met by the husband that these are marital funds that need to be distributed, but we're going to remand it to the trial court to determine, in its discretion, how to distribute those funds, et cetera. So I think one point I want to stress to the court, too, is the trial court, I think, because of feeling that the parties themselves couldn't have accumulated as much as they did, even though they clearly accumulated a lot on their own, he treated this like it was one big giant deposit. And the fact is that you had the $80,000 that came through the husband and father's joint account, the $48,000 that came through the husband and his sister's joint account, the $53,000 that we have no documentation where it came from, and then we have two years plus until the proceedings were filed and the money was being hidden by the husband of deposits of his paycheck, either direct deposit of the paycheck into the savings account for much of that time or the records show that earlier on the paychecks were deposited in the checking account and then big chunks of those, of the paychecks, $1,000, $2,000, $2,500 each month was transferred into the savings. So a lot of the money in the account at the time it started going out was clearly merit money. There's just absolutely no question. There's catechol or stiff pay from at least two or three years. His final check from Mailey was not accounted for. We think it shows up in one of the early bank statements and we specifically reference that in our brief. You also have the fact that there was about $90,000, roughly $95,000, from the date of the filing of the proceedings essentially until the date of the divorce two years later that were documented as having gone into his account and then been transferred to the father, which is all clearly merit money. So the vast bulk of this, even if you assume that those early deposits were adequately proven to be non-merit money, the fact is that over half of the money that eventually was in that account was clearly documented to be merit. So there's no basis for a broad sweeping stroke just to say, well, everything's non-merit. It's not a case, as counsel suggested in his brief, where you've got a large amount of non-merit money and a little bit of merit funds that were added in and then there's an effort to make the whole thing merit results. Nothing like that at all. Do we have any evidence of how they lived in Detroit? How long were they married when they were in Michigan? About three years in Michigan before they moved to Peoria. And was the money practiced the same as it was in Illinois? There is not much direct evidence of that, certainly not in terms of documentation, but there's no reason to believe from the evidence that it was any different in Detroit than it was in Peoria. And there is some evidence, I think, to suggest that it was. It was much more thoroughly explored as to their lifestyle in Peoria while they were there. So there is something to suggest that there might have been an accumulation of money. Yes. I think it's almost unquestionable that they would have accumulated amounts perhaps not quite as rapidly as they did in Peoria because he was making more money and eventually she was too. Any other questions? Thank you. Thank you, Your Honors. Mr. Bodie, good morning. May it please the Court, my name is Kirk Bodie. I represent the husband, Inder Dhillon. This is a short-term marriage, relatively speaking, and shortly after the marriage there was a huge influx of money, approaching $300,000 that was put into this account that my client set up. So it is true, you start out with the idea of money coming into the marriage after the marriage is presumed to be marital property. The real question is, did Inder, my husband, meet his burden of proof to show that it is from a source set out in 503A, which is non-marital? So are you conceding the trial court applied an incorrect burden of proof? No, I believe the trial court did apply the correct burden of proof. If there was any question in the decision on the motion to reconsider, the trial court says the court believed then and still believes today that the source of the funds came from outside the marriage, namely husband's father. So they put the burden on Inder, and Inder met the burden. The judge basically says that. And the evidence at the trial was, of course, Inder's statement that the money came from my dad and my sister. Documentation, Plaintiffs' Exhibit 4, 15, and 5. And then we have wife Navneet's admission that, to quote, it's entirely possible that the property could have come from other sources, including his father and sister. What's the documentary evidence that the money came from the father and sister? In all honesty, Your Honor, there isn't an accounting of every dollar. What we have is Plaintiffs' 4, 15, and 5, our bank records, that the money came in from the initial deposit of $80,000 from the joint account he had with his father, shortly thereafter $48,000 from the account that he had with his sister, and then the additional. So there's large sums of money coming in. From a joint account. How does that prove that it's not his? Well, it came from a joint account with husband and sister, not husband and wife. So it came into... How does that prove that it was not the husband's money? It's a joint account. He's a person on the account. How does that prove that that was not his money? Well, his testimony would say that it came from his dad or his sister. Her admission. And then the argument is made, and I know there's no burden on the wife, but the court made the comment that it's... I guess it's in the original trial court, that it doesn't make sense that this kind of money would come from these people living an austere lifestyle. Their argument is that because they led such an austere lifestyle, they were able to save like $300,000. My client during this time was making just a little bit in excess of $50,000. Wife, during this short-term marriage, came in with a bachelor's degree, got her MBA and got her CPA. She worked some part-time hours, and they lived an austere life. But if they were accumulating $300,000, you would see a gradual incremental growth in the money, rather than large deposits. And when the judge says, it doesn't make sense that that could come from that, where did that money come from? Is that clear and convincing evidence? I believe so. That the trial court thought that it didn't make sense? Well, that's, again, Navneet doesn't have the burden to prove that. But we think, intermittent the burden, the court can consider the circumstantial evidence, the fact that it came in in large chunks, rather than $50 bucks here or $100 bucks there, or $500 bucks here and there. It came in in large chunks of money from accounts that he had with his sister and his father, who was from India. And then shortly before the divorce, the money went back to the father and the sister. So we think the court did apply the right burden, put the burden on Ender, found that he met his burden, and then if there is to be reimbursement, now the burden shifts over to Navneet, the wife. And she then has to prove reimbursement, and then she has to show the marital contributions. Because the account is a non-marital account. I think the first duty of the court, and I think the judge in this case did the right thing, he determined the character of the account. Is it a non-marital account? Ender set up this account, and the money went in there as non-marital. Then there was some marital contributions into a chunk of non-marital money. The question, they argue that it transmuted, therefore, into marital property. We think it transmuted to small marital contributions because we can see some of Ender's paychecks went into this account. Some marital money went into this large non-marital fund of money. But then it becomes the receiving estate under 503C. It becomes the receiving estate so that those marital contributions are really transmuted into the non-marital receiving state. Now Ender can then... Excuse me, I'll... My reading of the trial court's order is that he found this was a marital account. I'm looking at paragraph 10 of his order that says there is no reimbursement order for the large deposits placed into husband's marital bank account. Commingling of these funds in a marital account was minimal and they were withdrawn. I guess it does say that, and I acknowledge that. The question is, when you say marital account, that means it was an account established during the marriage. You look to the source of the funds, the non-marital funds, put into that marital account. I can't read the mind of the trial court here. That does make it confusing. Where did he find that this was a non-marital account? I think this was cleared up in the motion to reconsider on the order of the court dated August 7th where he says the court believes today that the source of the funds came from outside the marriage. Now he hasn't used the word non-marital, but I think it's clear. That's when a source of funds comes from outside the marriage under 503A, that's what he means. That means that he's finding that this is a non-marital account. The money is non-marital. If the account, it's inappropriate. I think it's confusing. I acknowledge he says marital. I don't think he means the money's marital, but it's marital because it was presumed to be marital set up during the marriage. But he does say the money in that account, call it a marital account, is non-marital money, and therefore there's no dissipation because you can't dissipate non-marital monies, and the money should go back to Inder's father and sister. Can I point you on the numbers because you have a better working knowledge of the numbers than I do? You said there were two initial deposits, 80 and 40. The 80 came from a joint account with husband and his father. The 48,000 or $40,000 deposit came from an account with his sister. What went out when the marriage started breaking down? I think it was in 2007. What did he transfer out? Were they corresponding amounts of 80 to father and 40 to sister? I really can't answer that question very well. That's fine. This account was used to pay some marital expenses. So there was an influx of marital money into this pool of non-marital money. Does it become part of the marriage then if you're using money from that account? Again, it goes to what's the receiving estate. So if there's a non-marital pool of money and there are marital contributions, the law would say the receiving estate, which is the large sum of money, in one of the cases talked about a meager account set up before the marriage that then was kind of a fraud on the marriage. This is the large sum. It's the receiving account. Those marital funds, like Inder's paycheck, would be transmuted into non-marital money. And then that non-marital money can be used to pay marital expenses. We're not making a claim for reimbursement to the non-marital for what went out, but there was money in and out. But it was small compared to the large initial influx of money. Our argument is he treated it as a marital account because he made payments, bills, etc., out of that account. They had other accounts. This wasn't, I don't believe, a dominant account, but there was some activity during the marriage using this non-marital account. Yes, money went in and money went out. Our position is if Navneet wants reimbursement for the money that went in, the burden is on her to show by clear and convincing evidence what went in that account. Because she's asking for a reimbursement of marital monies from a non-marital pool of money. And our position is, well, she hasn't done that, but in any event, some money was paid out for some marital expenses and they kind of knitted each other out with some small amounts of marital that went in, small went out. But huge. When you say small amounts, what was the husband's paycheck that went in per month? Yes. My recollection is that was less than a year that his paychecks went into that account. And how much were the paychecks? Well, they were approximately $3,000 to $4,000 per month. And then some money went out too. You're calling that minuscule? Well, compared to $300,000, it is... Was that part of the $300,000? No. We think that because that money was set up with his mom's or his father's and his sister's account, and then there was this money in and money out that we believe essentially knitted each other out. Ideally... And what was the evidence of that? The bank records and the testimony of the parties. And again, an Avneet wife says she didn't know of this money. She says she didn't know of this money. Now we... Does that make it non-meritable that she didn't know about it? No, but her after-the-fact explanation as to how did... The marriage that started when she came into the marriage with nothing, he came in, he had this job in Michigan, and suddenly there's $300,000 in there that she doesn't know where it came from. The burden's not on her, but it certainly reflects on whether what Inder's telling is true. Now, I know the trial court said that Inder didn't have much credibility. No, yeah, he wasn't credible. And I think because... And if you read the whole order, that credibility was held against him right down the line until this particular issue. And I think that if the court was looking for a way to further rule against Inder because of credibility issues, the court would have done so, but I think the trial court found correctly that despite his lack of credibility, as the court determined, the evidence was clear that this was non-meritable monies. See, this is the question I have... Going back to the question I asked your opposing counsel. If the trial judge says, and it's your burden, your client's burden, to show that this is non-meritable, if the trial judge says that the husband is not credible and then goes along in the order, going along on these things point by point, and then hits this point and says, basically, because the only evidence, really, the essence of the evidence, that this was the father's money was his testimony. Isn't that correct? Well, some documentation, the bank records... Well, the bank records show some money in a joint account, going in and out, but it's basically his testimony saying it came from the father, isn't it? Well, yes, I mean, I understand. I mean, that's it. But you can't ignore the account with his sister and the account with his father. I know. There's an account with his sister and an account with the father, a joint account where it was transferred from the records, but the testimony is the only thing you've got to say where it came from. That was transferred in the bank records, you know, all along the line. And the trial judge says he's not credible, and so then at the end when he reaches this issue, the trial judge indicates that, well, because I don't know how else this could have come about, this was non-meritable, right? That's basically, in essence, what he's saying. What does that say about who he's imposing the burden on? Well, but the court does say in the order that his explanation is logical. Now, he doesn't use the word credible there, but he says it is logical. So apparently the trial court found that the explanation of Inder about that money was, I guess, credible or logical, he says, that it makes some sense given the fact they came in with nothing, there's not this incremental money they put in, some large sum of money comes in from dad and from sister, and how else do you explain it? And then they try to force upon the court the explanation, well, it's because of their austere lifestyle, they didn't eat out much. See, this is really sort of a fundamental question about proof and burdens. When you have a burden and you're found, and really the essential essence of the testimony is from one person, and that's the only thing that establishes where the money's from the father. And I know there were these joint accounts, but it's his testimony that the money's from the father. And that burden, as you recognize, is on your client to prove by clear and convincing evidence that that's the case. And the judge, you know, has these cascading inferences based on the lack of credibility. Then he hits this part in the ruling. And then that's when he's saying, well, it's like you say, it's illogical to say the money could come from anywhere else. It certainly couldn't have come from the marriage, I guess, is the essence of what he's saying, because where else would it come from? But again, is that a statement about switching burdens? Is that really a statement about switching burdens of proof of who has the burden? Because if you don't know where it came from, if you don't know where it came from and it's just there, what does that say about meeting your burden of proof? I guess my comment would be in the court's original ruling, one of the comments he makes right up front is there's no explanation how they could have generated this much income. That would give some inference that maybe he was putting the burden on wife. But then on the motion to reconsider, I think the court cleared that up by saying the court believed then and still believes today that the source of the funds came from outside the marriage and that husband's explanation at trial, that the money came from his father, is logical. So I think the motion to reconsider cleared up the burden of proof matter. He held the burden of proof and found that he met him despite his finding of lack of credibility on that. Again, going back to this question, maybe I'm just being overly simplistic about it, but in the simple case where it's by the preponderance of the evidence, who wins the tie? If you're not sure what happens, who wins the tie? The person, the defendant, the one without the burden? The one without the burden wins the tie. That's pretty simplistic, but here the burden is clear and convincing and the judge is saying, I don't know, I can't explain how they would acquire this much money. So the judge obviously has to then come to a conclusion that I'm going to assume it came from this outside source. Again, because there's a finding of lack of credibility from the only testimony about where it came from. Again, I think if you take Inder's testimony, suspect as the court may have deemed it, you have the documentation, granted it's not 100% of every dollar that went in there, but it's an accounting, the money came from these joint accounts with father and sister. And who put them in joint accounts? Well, the evidence was, Inder's testimony was, the money belonged to sister and father. Father was an Indian. I don't know why father was putting large sums of money in Inder's name and then got it back later. I don't want to infer any improprieties. And then if you take Navneet's statement, that it's possible that the money came from dad and sister because the burden's not on her, but she had no explanation other than this lifestyle business. And then you add the court who hears the evidence and sees the people and says, I'm going to use some, I guess, common sense and some inference here. How did this short-term marriage come up with $300,000? Where did it come from? That lends some credibility to husband's explanation and the documentation and Navneet's admission that it's possible it came from there. Again, the documentation is problematical because who put the money in there? I mean, it's only his testimony that it came from the father. Who created the joint tenancy accounts? I think the evidence was, perhaps based upon Inder's testimony, it was dad and sister created those with their money, put Inder's name on them. But it could also be the other way around. Except there was no evidence that either of these people had any money other than Inder had his 401k when they got married. There was no other marital assets that anybody, it wasn't there. When the judge, there's no other logical explanation for $300,000. No other lawful logical explanation. That's a reasonable inference, I would believe. You know, in the documentation question, usually in a matter of evidence, especially when people have the burden of proof, who would have had the access to acquire, I mean, there were attempts at discovery all along in this case, right? Yes, I was not the first counselor. I know, I'm not, this question is not casting aspersions, but there were attempts at discovery to no avail. And who would have had the wherewithal and the ability, the access, to get information from banks about time, places, transfers, you know, who would have had that access? One of the holders of the account, right? And that would be the husband. And it wasn't done, except for a couple things. So there's a lot of this picture that's missing, isn't there? If there were no documents, that's one thing, but there are considerable documents that do account for a good part of this money. That's why the Court says it's logical. Thank you. Just one last thing, Mr. Bode. You quoted a sentence from in here saying that it shows that the trial court applied the burden of proof to the husband, but at the beginning of that paragraph, he says the wife did not present evidence at trial, nor be an argument on her motion to reconsider, such that the court could trace funds to deem the marriage to be a source of these funds. That clearly and expressly puts the burden on the wife. Well, I can't say that I agree with you, but I understand. And I think part of that is because that was wife's attempt to, what we believe, to get a big payday. It was wife's attempt to say, well, we saved this money over the marriage. And I think what the Court's saying is here is that's ludicrous, ludicrous. Now, how the order was drafted, perhaps that first sentence, the part I quoted should have been first. I understand how the – we have to live with what the trial court wrote in his opinion. And we do too. Thank you. Thank you. Mr. Fleming. The Court may well be aware I could probably talk for hours on this at this point, and I realize I don't have that type of time, but there are so many things that get thrown around here without any basis in the record whatsoever. And I think we've got to get down to the fundamental point that the Didier case in particular and others say burden of proof is on the husband, clear and convincing evidence in this case to prove this money is non-marital. And the Didier case says that testimony alone without documentation is not sufficient to meet that burden. That's assuming the testimony is credible. And here the Court found that the husband was not credible. There's simply no way that the burden of proof was met here. And I think, as Justice McDade pointed out, the comments of the Court both in the original order as well as in the post-trial order demonstrate that it was the wife's inability to provide evidence that convinced him as well as I said I think this general thought. Everybody seems to be overlooking the fact that the evidence clearly shows the husband's entire paycheck was put into savings for 13 months. The bulk of it was put into savings for another seven months before that. That's just during the 20-month span from when this account was opened until things started to go to hell in a handbasket and the money started getting transferred out. Then there's the additional savings after that that he kept saving all or most of his paycheck every month and then transferring it into a new joint account with his father and eventually into the father's account. It's all documented, and I've tried to set it forth in our brief. Can you give me a sense of the inflow and the outflow? I asked Mr. Bode the initial two deposits, 80 and 40 roughly, and then what went out? If the court would look at page 17 of our appendix, the transfers out of the account, the initial large transfers, March 19, $97,126. March 19 again, $100,000. March 20, $50,000. March 23, $20,000. And March 30, $10,000. So in 11 or 12 days, a total of $277,000 was taken out. So if he was simply returning the money that his father had provided and his sister had provided, he repaid much larger amounts. Much larger amounts. And keep in mind, this $300,000 number that the court seemed to be caught up with and Mr. Bode even mentioned a moment ago, this $300,000, that's the amount of money that was in that account, give or take, at the time these transfers were made out. And there was about $25,000 left at that time, which later was transferred out. That includes the $80,000 that came through this joint account with the father, the $48,500 that came through the joint account with the sister, another $2,000, $2,500 through the joint account with the father, and then $53,000 that we don't know where it came from. That was all deposited in the first couple of months of this account, about $184,000. Everything else after that is not even challenged as being marital contributions. So out of $300,000, $120,000 basically was accumulated by the parties without even considering where this money came from. He said that it was not even challenged as marital contributions. It wasn't challenged as, it wasn't defended as non-marital. You're right. That's a better way to put it, yes. And if I understand you correctly, you almost conceded that the $80,000 and $40,000 are up in the air, those initial deposits. I know you're not conceding. I'm saying if you assume for a moment that they're up in the air. That husband was credible. Yeah. That's the source for those funds, and there's no explanation for the rest of it. Yeah, there's no explanation for the rest of it. And you can see most of it, I mean much of it you can see is documented directly out of the husband's paycheck. There are some smaller deposits, $1,000 or $2,000 here or there in differing amounts that there was no explanation for one way or the other. But again, all of it accumulated during the marriage, so the presumption is it's all marital property. So I think the only thing that has any documentation that would remotely suggest that it might be non-marital property is the $82,524 through the joint account with the father and the $48,500 through the joint account with the sister. And under Didier, I think that's totally insufficient because it doesn't go to source. Where is the money? It could easily be money that was accumulated earlier during the marriage that was transferred through those accounts for 24 hours and into this joint account. We don't know. There's no documentation provided, and the burden of proof by clear and convincing evidence is on the husband. We've also set forth on page A16 of our appendix the balance in that savings account at the end of every month up through immediately before the divorce action was filed. And the court can see from that how there were the two original deposits or three original deposits totaling about $131,000 through those joint accounts. And after that, the balance keeps going up. There were some withdrawals here and there too, yes, but the balance keeps going up and goes from the $131,000 in the summer of 2005 up to basically $297,000 immediately before all these withdrawals happened in March of 2007. And that process took place over the course of several months. In fact, transfers were still going on at the time the divorce petition was filed by Mr. Dillon in August of that year as well as the transfers of new money that came in after that. Any other questions for Mr. Blumenthal? Thank you, Your Honors. Mr. Boding, you still have five minutes to talk about your counter-appeal, cross-appeal. I promise I believe I'll be brief. This has to do with the trial court's ruling, as I mentioned earlier, on many of the issues other than the one, the big issue, the big money issue. The court ruled against Inder on almost everything except for the non-marital monies. His pension, he came into the marriage, he previously worked at Mollie in the Detroit area, and he brought into the marriage his 401K. And then he rolled it over into a Caterpillar 401K that accumulated some during the marriage, and the judge awarded Nat Hage 50% of the entire 401K balance at the time of the divorce and did not allow Inder anything for his non-marital money that he brought in to the marriage. And we believe that was error because we proved that there was a balance. It's not a large balance, it's $3,000 or $4,000 without me looking at the record here. The balance as of about six months before the parties married was between $3,000 and $4,000. And he should have got that, that should have been segregated out, and he should have got 50% only of that portion accumulated during the marriage. Any questions? Thank you. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change. The court is now in recess.